FILED
4th JUDICIAL DISTRICT COURT
San Miguel County
9/18/2020 4:17 PM
CLERK OF THE COURT
HJT

STATE OF NEW MEXICO
COUNTY OF SAN MIGUEL
FOURTH JUDICIAL DISTRICT

ANDREW LOVATO

    Plaintiff,

v.

THE BOARD OF TRUSTEES OF LUNA
COMMUNITY COLLEGE, LUNA COMMUNITY COLLEGE,
RICKY SERNA, in his individual capacity,
MATT CORDOVA, in his individual capacity, and
MIKE JARAMILLO, in his individual capacity,

    Defendants.

Civil No. D-412-CV-2020-00322
Jury Trial Demanded

Aragon, Abigail



EXHIBIT A

## COMPLAINT FOR DAMAGES

Comes now Andrew Lovato, by and through his attorneys, Steven K. Sanders (Steven K. Sanders & Associates, LLC) and Pia Gallegos, (Pia Gallegos Law Firm P.C.) and asserts the following claims. This Complaint is for breach of contract, violation of due process and violation of the New Mexico Whistleblower Protection.

### Parties, Jurisdiction, Venue

1. Plaintiff Andrew Lovato is an individual who resides in Bernalillo County, New Mexico.

2. Defendant Luna Community College ("LCC") is college instituted through the enactment of a law of the State of New Mexico, located and doing business in the County of San Miguel, New Mexico. (See N.M.Stat. §21-13-1 etc.) Defendant Board of Trustees of Luna Community College (BOTLCC) is the governing body of Defendant Luna Community College and is the entity that is empowered to determine institutional policies of LCC and to employ all LCC personnel as more fully set forth in the LCC Board Policy Manual.

3. Defendant Luna Community College and Defendant Board of Trustees of Luna Community College are public employers as defined by the New Mexico Whistleblower Protection Act as LCC and the Board of Trustees of LCC are political subdivisions of the state, created under a general or special act, that receive and expend public money from whatever source derived. See N.M. Stat. 10-16C-2C.

4. Defendant Ricky Serna is an individual acting in his individual capacity and under color of law. At all times relevant, he was the Interim President of Defendant **LCC and Chief Executive to the BOTLLC.**

5. Defendant Matt Cordova is an individual acting in his individua capacity and under color of law. At all times relevant, he was the Director of Maintenance of Defendant LCC and on information and belief, the direct supervisor of Defendant Mike Jaramillo.

6. Defendant Mike Jaramillo is an individual acting in his individual capacity and under color of law. At all times relevant, he was Maintenance Supervisor of Defendant LCC and on information and belief, the direct supervisor of Plaintiff, Andrew Lovato.

7. All actions relevant to this case took place at the location of the Luna Community College, in the County of San Miguel, New Mexico.

8. This court has subject matter jurisdiction over all issues in this case.

9. The appropriate venue for this case is in this Court.

**First Claim: Breach of Contract by Defendants BOTLCC AND LCC**

10. Defendants Board of Trustees of Luna Community College and Defendant Luna Community College ("LCC" or "College") employed Plaintiff Andrew Lovato as a General Maintenance 2 position continuously from August 15, 2015 to September 24, 2018.

11. Defendants BOTLCC and LCC employed Plaintiff Lovato as a non-exempt employee through a succession of three written employment contracts.

12. Plaintiff Lovato completed his one-year probationary period on August 15, 2016.

13. What turned out to be the final, written employment contract between the parties was signed by Defendant Ricky Serna, on behalf of Defendant LCC, on June 18, 2018, and by Plaintiff on June 27, 2018. Exhibit 1.

14. The written contract of employment of Plaintiff by Defendants BOTLCC and LCC was for the period from July 1, 2018 through June 30, 2019.

15. The written contract specified that as a non-probationary employee, Defendants could terminate Plaintiff only for cause:

> Non-probationary employee's contract may be terminated by Employer *with cause*, including, but not limited to, unsatisfactory work performance, incompetence, insubordination, inability to perform the required duties or as a result of decreased student enrollment, reduction in revenues, or on elimination or modification of educational programs, or departments, or for any other just cause. In the event Employer terminates this agreement with cause, Employer shall provide the employee with reasonable written notice and the Employee will be paid his/her regular salary up to the date of termination in accordance with state and federal wage and hour regulations, less any required and voluntary withholdings.

(Emphasis in original.)

16. On Monday, September 24, 2018, at about 10:00 am, Defendants' Human Resources representative terminated the employment of Plaintiff without cause, through a letter of termination dated September 21, 2018 and signed by Defendant Ricky Serna. The back-dated letter was not reasonable notice of termination in violation of the requirements of the written contract, Exhibit 1.

17. Defendants' BOTLCC and LCC's termination of the employment of Plaintiff was without cause and in violation of the June 18, 2018 written contract and the Staff Manual

applicable to Plaintiff's employment as more fully described in Claim 2 infra which is incorporated by reference.

18. Defendants' **BOTLCC** and LCC's termination of Plaintiff's employment without cause and in violation of the Staff Manual provisions caused Plaintiff to lose at least 40 weeks of employment that he was entitled to under the current contract, equivalent to lost wages of approximately $21,420.00, plus benefits.

### Second Claim: Violation of Due Process Right
### By All Defendants

19. Plaintiff incorporates by reference the allegations contained in both the first and third claims for relief as though set forth in full herein.

20. This claim arises under the United States Constitution, particularly under the provisions of the 14th Amendment to the United States Constitution. This is a claim for damages for violation of the due process clause by deprivation of rights under a contract of employment, under color of statute, regulation or custom of the State of New Mexico and THE BOARD OF TRUSTEES OF LUNA COMMUNITY COLLEGE and LCC in violation of the Civil Rights Act, Title 42 U.S.C. § 1983, with additional remedies provided by 42 U.S.C. § 1988. Plaintiff seeks damages, attorneys' fees, expenses and costs against all Defendants. Plaintiff seeks punitive damages against the individual defendants for their egregious conduct.

21. Plaintiff was a contract employee of Defendant THE BOARD OF TRUSTEES OF LUNA COMMUNITY COLLEGE and LCC, having a written contract signed by Defendant Serna for the period July 1, 2018 through June 30, 2019 serving as a maintenance worker. Plaintiff had been employed for more than two years by Defendants LCC and BOTLCC at the time of his termination. Plaintiff served as a Full Time Professional and/or Support staff. FSLA-exempt.

Additionally, Plaintiff's contract of employment incorporated the provisions of the LCC Staff Handbook as terms of his employment contract.

22. Plaintiff's employment was in a non-management position. Plaintiff's employment was governed by and subject to an implied contract under the Staff Handbook adopted 11/17/10 and applicable to Plaintiff's employment for 2018-2019.

23. Defendant THE BOARD OF TRUSTEES OF LUNA COMMUNITY COLLEGE and Defendant Luna Community College constitute a public educational institution organized and existing pursuant to the laws of the State of New Mexico. Defendants THE BOARD OF TRUSTEES OF LUNA COMMUNITY COLLEGE and LUNA COMMUNITY COLLEGE are "persons" within the meaning of 42 U.S.C. 1983. (See *Daddow v. Carlsbad Municipal School District*, 120 N.M. 97, 898 p.2D 1235 (1995); *Duke v. Grady Mun. Schools*, 127 F.3d 972, (C.A.10 (N.M.) 1997). Alternatively, the state of New Mexico has waived these Defendant's eleventh amendment immunity.

24. Defendant RICKY SERNA was at all times material hereto the Interim Superintendent of Defendant THE BOARD OF TRUSTEES OF LUNA COMMUNITY COLLEGE, who acted in his individual and official capacity. At all times relevant hereto, the acts of this Defendant, complained of herein, were done under the colored pretense of statutes, ordinances, regulations, customs and usages of the State of New Mexico, Defendant BOTLCC and Defendant LCC, and by virtue of and under the authority of Defendant's office as Interim Superintendent. All actions taken by this Defendant were the actions of Defendants LCC and BOTLCC because this Defendant was the person who made, implemented, determined and controlled Board and LCC policy.

25. Defendant MATT CORDOVA was at all times material hereto the Director of Maintenance of Defendant THE BOARD OF TRUSTEES OF LUNA COMMUNITY COLLEGE and LCC, who acted in his individual capacity. At all times relevant hereto, the acts of this Defendant, complained of herein, were done under the colored pretense of statutes, ordinances, regulations, customs and usage's of the State of New Mexico, Defendant BOTLCC and Defendant LCC and by virtue of and under the authority of Defendant's office as Director of Maintenance. Defendant MATT CORDOVA was the supervisor of Defendant MIKE JARAMILLO.

26. Defendant MIKE JARAMILLO is an individual acting in his individual capacity and under color of law. At all times relevant, he was Maintenance Supervisor and Plaintiff's immediate supervisor for Defendants BOTLCC AND LCC, who acted in his individual capacity. At all times relevant hereto, the acts of this Defendant, complained of herein, were done under the colored pretense of statutes, ordinances, regulations, customs and usage's of the State of New Mexico, Defendant BOTLCC and LCC and by virtue of and under the authority of Defendant's office as Maintenance Supervisor.

27. Pursuant to the Luna Community College Staff Handbook and New Mexico law, Plaintiff was entitled to certain pre and post termination hearings as required by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). Defendants Serna, Cordova and Jaramillo failed to follow the Handbook and intentionally failed to ensure that Plaintiff's due process rights were afforded as more fully set forth herein.

28. For instance, pursuant to Section 9.2.4.1 of the Staff Handbook, during a disciplinary investigation, the employee's supervisor is required to document all actions on the "approved Corrective Action form." On information and belief, no such documentation was done by either Defendants Jaramillo or Cordova. On information and belief, Defendant Serna failed to follow

6

the Handbook and intentionally failed to ensure that Plaintiff's due process rights were afforded as more fully set forth herein in order to keep quiet the allegations of theft of school property.

29. On information and belief, when an employee is under investigation the supervisor is required by Section 9.2.4.2 to, "Conduct a thorough investigation to determine whether the facts show that the employee violated a College policy and/or procedure. Details of the behavior and/or incident must be included in the approved Corrective Action Form. On information and belief, no thorough investigation was conducted and the details of the Plaintiff's alleged behavior were one-sided or not recorded by Defendants Jaramillo or Cordova. On information and belief, Defendant Serna failed to follow the Handbook and intentionally failed to ensure that Plaintiff's due process rights were afforded as more fully set forth herein in order to keep quiet the allegations of theft of school property.

30. The LCC Staff Handbook, Section 9.2.4.3 states that "During a disciplinary investigation, the employee's supervisor shall do the following:…Allow the employee an opportunity to explain what happened." Plaintiff was not allowed that opportunity during any investigation by his either Defendant Jaramillo or Defendant Cordova or any other employee of LCC, including Defendant Serna. On information and belief, Defendant Serna failed to follow the Handbook and intentionally failed to ensure that Plaintiff's due process rights were afforded as more fully set forth herein in order to keep quiet the allegations of theft of school property.

31. Pursuant to Section 9.2.5.1, an employee under investigation is entitled to have a witness during any meeting to discuss discipline. This right was not afforded Plaintiff in violation of the LCC Staff Handbook. Further, if the employee elects not to have a witness, that fact is required to be noted on the disciplinary form provided by LCC. On information and belief, Plaintiff was not notified of his right to have a witness present during the investigation by

Defendants Jaramillo or Cordova and the interactions between Plaintiff and the Human Resources Director have not been independently documented resulting in a loss of evidence by Defendants.

32. Pursuant to Section 9.2.6 of the Staff Handbook, the supervisor may make a recommendation of termination, "after investigation". In this case because Plaintiff had evidence of taking of LCC property without permission by the supervisor, there was no investigation by the supervisors, Jaramillo or Cordova and no investigation by the HR Director or by Defendant Serna of the facts of the alleged taking or even of the facts allegedly constituting just cause for termination. No Defendant asked any questions about the allegation.

33. Plaintiff was never afforded a pre-disciplinary hearing by the Interim President of LCC, Defendant Serna, in violation of the requirements of both *Loudermill* and the LCC Staff Handbook requirements. See Section 9.2.7 of the LCC Staff Handbook.

34. on information and belief, no pre-disciplinary hearing was ever scheduled nor afforded to Plaintiff by any Defendant in order to keep the allegations of theft by Jaramillo quiet. Plaintiff never waived his right to the pre-disciplinary hearing.

35. On information and belief, no hearing officer was ever named by the by the Interim President and no pre-disciplinary hearing was held by any hearing officer as required by Section 9.2.7.3 of the LCC Staff Handbook. This constitutes a due process violation. On information and belief, Defendant Serna failed to follow the Handbook and intentionally failed to ensure that Plaintiff's due process rights were afforded as more fully set forth herein in order to keep quiet the allegations of theft of school property from the public and any hearing officer.

36. Further, Plaintiff was not allowed to be represented by counsel, nor present witnesses or evidence to any hearing officer as required by Section 9.2.7.3 and *Loudermill*. This constitutes a due process violation by Defendants and especially Defendant Serna.

37. Since there was no pre-disciplinary hearing, there were no written findings or conclusions presented to Plaintiff in violation of Section 9.2.7.4. This constitutes a due process violation.

38. Additionally, no post termination hearing before a neutral and independent arbitrator was afforded Plaintiff in violation of Section 9.3.8.1 of the LCC Staff Handbook. This constitutes a due process violation.

39. Further, Plaintiff was not afforded the right to representation, nor the presentation of witnesses and other evidence concerning his termination in violation of Section 9.3.8.2 This constitutes a due process violation.

40. At no time has any Defendant provided Plaintiff with any pre or post termination hearing as required by the United States Constitution or the Fourteenth Amendment to that Constitution.

41. New Mexico state law, Plaintiff's written contract of employment and the LCC Staff Handbook establish property rights under the laws of the State of New Mexico.

42. At the time the time of termination, Plaintiff had a reasonable expectancy of continued employment based upon New Mexico state law, his written contract and the LCC Staff Handbook.

43. There was no good and just cause justifying termination and no misconduct justifying Plaintiff's termination when the notice of termination was given to Plaintiff and in fact, on information and belief, the termination and refusal to provide any pre or post termination hearing was in retaliation for and to keep quiet the allegations of theft that Plaintiff made against Defendant Jaramillo.

44. No meaningful hearing was provided either before or after Plaintiff's termination.

45. Plaintiff had a property interest in a right to proper procedures in his termination.

46. The termination of Plaintiff from his employment without prior notice of any charges, and without a meaningful opportunity to be heard before a neutral judge was in violation of Plaintiff's property rights and due process rights, in violation of the New Mexico Constitution, Article II, Section 18 and in violation of the United States Constitution, Amendment 14. On information and belief, Defendant Serna failed to follow the Handbook and intentionally failed to ensure that Plaintiff's due process rights were afforded as more fully set forth herein in order to keep quiet the allegations of theft of school property.

47. In depriving Plaintiff of these rights, Defendants, and each of them were acting under color of the law of the State of New Mexico and the laws, ordinances, regulations, and customs of the BOTLCC and LCC.

48. As a proximate result of Defendants' conduct in terminating Plaintiff as an employee, Plaintiff has been damaged by the loss of past and future earnings and employment benefits, including sick leave and health benefits and retirement benefits.

49. Plaintiff has suffered emotional distress and loss of enjoyment of life. Plaintiff has had to leave his home to secure employment causing additional emotional distress and loss of income.

50. As a result of Defendants' conduct, Plaintiff's reputation as a faithful and diligent employee has been damaged and it has become difficult if not impossible for Plaintiff to secure comparable employment.

51. The acts of the individual Defendants were motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of Plaintiff and as such an award of punitive damages is warranted against the individual Defendants.

52. As a result of Defendants' conduct, Plaintiff has had to hire an attorney and has incurred legal fees.

WHEREFORE, premises considered, Plaintiff prays that this Court award compensatory and special damages, punitive damages against the individual defendants and pre and post judgment interest and attorney fees and such other and further relief as this Court may deem just and proper.

### Third Claim: Violation of the New Mexico Whistleblower Protection Act By Defendant LLC

53. Plaintiff Lovato incorporates by reference all prior allegations into this claim as though set forth in full herein.

54. During the course of employment with Defendant LCC, Plaintiff Lovato witnessed his Maintenance Supervisor, Mike Jaramillo, take items belonging to Defendant LCC without any known permission, and each time, Plaintiff, in good faith and belief, reported the taking to various members of the LCC Board of Trustees.

55. Soon after Plaintiff Lovato started working at Defendant LCC, he assisted his supervisor, Defendant Mike Jaramillo, to hoist several 10-12 foot, 2-inch steel pipe onto a company pickup. Not knowing the destination of the pipe, Plaintiff got into the truck's passenger seat, and Defendant Jaramillo drove the truck to the home of a friend of Jaramillo's, on Cinder Road. In transit, Defendant Jaramillo explained to Plaintiff Lovato that he, Jaramillo, was going to use the pipe to build a chicken coop.

56. Within about 2 weeks of learning of this taking of the steel pipes believed to be owned by LCC as committed by Defendant Jaramillo, Plaintiff Lovato, again in good faith and belief, reported it to various Defendant LCC Board of Trustee members. The reports by Plaintiff to the Board members constituted communications to the public employer about unlawful or improper acts by Defendant Jaramillo as further defined by N.M. Stat 10-16C-3A and 10-16C-2E.

57. A short time after Plaintiff's good faith and belief in reporting the taking of the steel pipes, Defendant Director of Maintenance Matt Cordova and Defendant Mike Jaramillo confronted Plaintiff Lovato and asked him why he was talking to Board members. On information and belief, Defendants Cordova and Jaramillo formed a retaliatory animus against Plaintiff Lovato for reporting Defendant Jaramillo's taking of the steel pipes belonging to Defendant Luna Community College.

58. In about 2016, Plaintiff Lovato arrived at the Grounds Maintenance Building from the field at about 3:50 p.m., his regular time for unloading. replacing tools and equipment, and storing the vehicle. Plaintiff had to charge his 2-way radio and so moved Defendant Jaramillo's jacket to get to the charger. Under the jacket, Plaintiff Lovato saw a calking gun and 2-3 tubes of calking. Plaintiff then saw Defendant Jaramillo scoop up his jacket with the calking equipment and tubes underneath it and exit the building.

59. Within about 2 weeks of learning of this taking of the calking gun and tubes of calking by Defendant Jaramillo, Plaintiff Lovato in good faith and belief reported it to various Defendant LCC Board of Trustee members. The reports by Plaintiff to the Board members constituted communications to the public employer about unlawful or improper acts by Defendant Jaramillo.

60. A short time after reporting the taking of the calking gun and tubes of calking, Defendant Cordova and Defendant Jaramillo again confronted Plaintiff Lovato and asked him why he was talking to Board members. On information and belief, Defendants Cordova and Jaramillo formed a retaliatory animus against Plaintiff Lovato for reporting in good faith and belief, Defendant Jaramillo's taking of the calking gun and calking tubes.

61. At another point in 2016, Defendant Jaramillo, assigned Plaintiff Lovato to work at the West Las Vegas High School baseball field (shared with LCC), rebuilding the dugouts and placing metal roofs on them.

62. On a Monday morning during the West Las Vegas High School field assignment, Plaintiff Lovato arrived to work and discovered that the pipe-frame cage or shed that was there on Friday was no longer there. Plaintiff Lovato asked around, and a coworker told him that on Saturday, he had seen Defendant Jaramillo, drive an LCC backhoe, pull out the pipe structure, and load it onto Defendant Jaramillo's personal flatbed trailer. The coworker had questioned Defendant Jaramillo, and Jaramillo told him he took it to his property in Los Vijiles.

63. Some days later, Defendant Jaramillo told the same coworker that he "borrowed" Defendant LCC's electric paint spraying gun and painted the pipe structure to hide that he took it.

64. After learning of Defendant Jaramillo's taking of the West Las Vegas High School shed, Plaintiff Lovato reported it to various Defendant LCC Board of Trustee members in good faith and belief. The reports by Plaintiff to the Board members constituted communications to the public employer about unlawful or improper acts by Defendant Jaramillo.

65. In addition, when a new Board member assumed his position in 2018, Plaintiff Lovato in good faith and belief reported all takings by Defendant Jaramillo to him.

66. Again, Defendants Matt Cordova and Mike Jaramillo confronted Plaintiff Lovato and asked him why he was talking to Board members. On information and belief, Defendants Cordova and Jaramillo formed a retaliatory intent against Plaintiff Lovato for reporting the taking of the West Las Vegas High School shed.

67. On April 16, 2016, Plaintiff Lovato asked Defendant Matt Cordova for time off to vote on April 17, 2016, but Cordova denied the request.

68. Plaintiff Lovato requested further information on the LCC voting policy but Defendant Cordova refused to discuss it further.

69. Plaintiff Lovato then spoke to a Human Resources representative to check whether he was allowed time off to vote, and he communicated to the Human Resources representative in good faith and belief that Defendant Cordova had committed an illegal or improper act by not permitting him time off to vote. After checking, the representative informed Plaintiff that he was eligible to leave work to vote so long as he was a registered voter.

70. On the following day, Plaintiff Lovato informed Defendant Jaramillo that the LCC Human Resources representative had given him approval to vote, and he asked for time off to vote. Defendant Jaramillo assented and gave him time off to vote.

71. When Defendant Cordova learned that Plaintiff Lovato had reported Cordova for not permitting Plaintiff time off to vote, Cordova became angry.

72. In retaliation for Plaintiff Lovato reporting Cordova's failure to apply the voting rule correctly and exercising his legal right to vote, Defendant Cordova issued an unsubstantiated verbal warning to Plaintiff Lovato and counted the two hours of leave that Plaintiff had taken as annual leave and subtracted it from Plaintiff's accrued annual leave.

73. Plaintiff Lovato complained to Defendant Cordova about the disciplinary action and about docking his annual leave instead of voting leave as was his right under Luna Community College policy and New Mexico law. Defendant Cordova formed a retaliatory intent against Plaintiff for Plaintiff's complaints to LCC Human Resources and to Defendant Cordova himself.

74. On September 19, 2018, Plaintiff Lovato returned to the Grounds Building from the field with a coworker at 3:50 p.m. to unload and put away tools and vests, park the vehicle, and close the shop which would take several minutes.

75. Defendants Jaramillo and Cordova were there and greeted Plaintiff Lovato with hostility. Jaramillo accused Plaintiff of returning early. He did not accuse Plaintiff's coworker of returning early even though the coworker had the same hours as Plaintiff and arrived with Plaintiff ten minutes before quitting time for the day.

76. Plaintiff Lovato defended himself, saying that this was the regular and usual time for arriving to the shop and that if he were to arrive at 4 pm sharp, he would have to clean the truck and put away the tools on his own time. This constituted a good faith and belief of a violation of the New Mexico and United States overtime laws.

77. Defendant Jaramillo then inexplicably accused Plaintiff Lovato of taking breaks that were too long and taking lunch time that was too long and directly accused Plaintiff of stealing work time from LCC. These accusations targeted at him alone were totally false; Plaintiff Lovato was scrupulous about meeting his break and attendance requirements. In fact, he was one of the first employees to work every morning, along with the custodian who would open the gate for the firstcomers. Plaintiff was also consistently early in getting back from lunch, routinely arriving at 12:35 even though he did not have to start work until 1:00 p.m.

78. The hostility on September 19, 2018 was the very first time that either Defendants Jaramillo or Cordova had ever accused Plaintiff Lovato of leaving early or not working a full day.

79. Plaintiff Lovato was insulted by the accusation that Plaintiff was stealing in light of the apparently open thefts by Defendant Jaramillo. Lovato said to Jaramillo, in the presence of

15

Defendant Cordova, "You're the one who stole the shed from West Las Vegas." Defendant Jaramillo then said that Plaintiff should return a work tool that Jaramillo had loaned Plaintiff. Jaramillo said that if Plaintiff did not return the tool that he, Jaramillo would report it stolen.

80. Defendant Cordova never questioned Plaintiff about the accusation of theft by Defendant Jaramillo. Additionally, no other employee of LCC questioned Plaintiff about the allegation of theft by Defendant Jaramillo. On information and belief, no investigation into the allegation was ever conducted by Any Defendant.

81. Plaintiff's accusation against Jaramillo re-ignited retaliatory motives of Defendants Jaramillo and Cordova, and they persisted in their false accusations that Plaintiff was stealing time from Defendant.

82. On information and belief and in retaliation for Plaintiff's multiple good faith reports of improper or illegal conduct by Defendants Cordova and Jaramillo as described herein,, Jaramillo and/or Cordova went to Defendant Ricky Serna and requested that Serna terminate Plaintiff Lovato without cause and without a hearing so that they would not have to face the accusation of theft from LCC during the hearing. On information and belief, Defendant Serna agreed to the termination and agreed to deny Plaintiff any pre or post termination hearing. His actions constitute the actions, policy and procedure of LCC as only Serna had the power to terminate any employee of LCC.

83. In the months after the termination, Plaintiff Lovato's health deteriorated. He suffered from elevated blood sugar, elevated blood cholesterol, and elevated blood pressure. After the termination, Plaintiff Lovato stayed at home because he was ashamed of his unemployment, he had no money for gas or to go out, and he lost the joy of life. He developed pain in his back, his arms and his leg and received treatment from a physical therapist.

84. Plaintiff Lovato had trouble sleeping; he would wake up sweating and in a panic. He would wander around the house. During the day and at night, Plaintiff Lovato would sit on the couch for hours and not do anything. If he went out of the house due to necessity, he would find himself hypervigilant of his surroundings, afraid to see people; he would hurry home.

85. The discharge stemming from retaliation and without cause resulted in Plaintiff Lovato becoming depressed and anxious. Among other things, he felt anxious and nervous about not being able to pay his bills. Plaintiff Lovato had to sell his possessions in order to make ends meet. He had to sell the utility trailer and a tractor, his tools and his household goods.

86. When Plaintiff Lovato was fired, he looked for work in the Las Vegas area but found none. He then based himself in Albuquerque in order to look for work. Being away from his ill family members and the inability to buy gas to go to northern New Mexico caused further stress.

87. Plaintiff Lovato still has depression and anxiety from the illegal termination. He is still paying back high-interest loans that he had to take out to pay his bills.

88. Under the Whistleblower Protection Act, Plaintiff is entitled to "actual damages, reinstatement with the same seniority status that the employee would have had but for the violation, two times the amount of back pay with interest on the back pay and compensation for any special damage sustained as a result of the violation," in addition to attorney fees and litigation costs.

WHEREFORE, Plaintiff requests the Court to enter judgment in his favor and to award him lost wages, back pay, interest on the back pay, damages for pain and suffering, special damages, attorney fees and litigation costs.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable of right by a jury.

Respectfully submitted.

*PIA GALLEGOS LAW FIRM, P.C.*

*/s/ Pia Gallegos*
116 14th St. S.W.
Albuquerque, NM 87102
(505) 842-8484
(505) 842-8200 (facsimile)
pia@gallegoslaw.com

and

STEVEN K SANDERS & ASSOCIATES, LLC

*/s/ Steven K. Sanders*
820 Second Street NW
Albuquerque, NM 87102
505-243-7170  Office
505-243-7755 Fax
StevenKSanders@aol.com